Aug. 11, 1876,  }                    CLARK v. TARBELL.

*Chattel mortgage—Want of affidavit and record.*

Although the parties to a chattel mortgage neglect to make and subscribe the affidavit required by Gen. Stats., ch. 123, sec. 6, and although the mortgage is not recorded, it is nevertheless a valid mortgage as against an attaching creditor, provided possession of the mortgaged property be taken by the mortgagee.

FROM HILLSBOROUGH CIRCUIT COURT.

ASSUMPSIT, on a sheriff's receipt, by Moses Clark against Joel H. Tarbell and John H. Tripp. Plea, the general issue, with a brief statement, setting out, among other grounds of defence, that the property at the time it was attached by the plaintiff was subject to a mortgage to one Levi Keese, and to another mortgage to Levi Keese, one Abel E. Conant, and the defendant, Tripp ; and that the defendants, after receipting for the property, restored it to the mortgagees with the consent of Jacob D. Putnam, the mortgagor and defendant in the original suits.

The plaintiff introduced evidence tending to show that the property was attached by him in four suits against Putnam ; that judgment having been recovered by the plaintiffs, they placed their executions in his hands to levy on the property attached ; and that he seasonably demanded the same of the defendants.

The defendants introduced two mortgages of real estate from Putnam, one to Keese, and the other to Keese, Tripp, and Conant, in which was also included the personal property which is the subject of controversy in this suit.

Neither of the mortgages was sworn to in accordance with the provisions of the General Statutes in relation to personal mortgages, nor was either of them at the time of the attachment recorded in the

town of Lyndeborough, where the property described therein was situated at the time of the attachment. The defendants then offered to show that the property mentioned in the receipt was at the time of the attachment in the possession of the mortgagees by virtue of said mortgages, and that it was subsequently sold by them, and the proceeds applied in satisfaction of the mortgage debts; but the court ruled that the mortgages were invalid as against the attachment, and that possession under them could not avail as against the attaching creditors, to which the defendants excepted. The court directed a verdict for the plaintiff for the amount of the receipt, judgment to be rendered thereon for the amount thereof, or for the amount due on the judgments in the suits in which the property was attached, or to be set aside and a new trial granted, as the court shall be of opinion on the foregoing facts.

The questions of law arising on the foregoing case were transferred to this court by STANLEY, J., C. C.

*Stevens & Parker* and *Barrett*, for the defendants.

*A. W. Sawyer* and *Burns*, for the plaintiff.

SMITH, J. Certain evidence was offered by the defendants and excluded by the court. But the facts offered must, for the purposes of this case, be considered as proved.

The fact, that the chattels attached were found in the possession of the mortgagees at the time of the attachment, was of itself sufficient notice to the attaching creditors that should have put them upon inquiry to ascertain whether they held it by some title inconsistent with an unincumbered title in the mortgagor. Possession of chattels is presumptive evidence of ownership.

The mortgages to the defendants were defective in two particulars: (1) the affidavit required by sec. 6, ch. 123, Gen. Stats, was lacking, and (2) they had never been recorded. By section 2, the mortgagee is required to retain possession of the mortgaged property, unless the mortgage is duly recorded; and by section 6, the mortgagor and mortgagee are required to make and subscribe an affidavit as to the justness of the debt secured. When the mortgage is given to secure a liability (section 9), the affidavit is to be varied accordingly. Section 12 is in these words: " No such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed."

In *Gooding* v. *Riley*, 50 N. H. 400, a mortgage of personal chattels, without the affidavit required by law, was held valid against a subsequent mortgagee having notice that the prior mortgage was made in good faith and for a full consideration. In the able discussion in that case by BELLOWS, C. J., he says " that the statute requisites are equally imperative in the cases of mortgages of *real* and of *personal* property; and the provisions, making the conveyances void as to all per-

sons but the grantor and his representatives in case of a failure to comply with the statute requisitions, are equally explicit in the two cases.

" Between the two cases there is this distinction. In respect to real estate, the object of the registry laws is to provide for notice of all conveyances, to protect purchasers and others against secret conveyances; while in the case of mortgages of personal property, the object of requiring the affidavit is to guard against the making of fraudulent or fictitious mortgages *to enable the mortgagor to retain the possession of the property* and set his creditors at defiance.

" Where the object of the statute is notice simply through the registry, there would be much force in the suggestion that actual personal notice ought to be equivalent to the record; and it has been held that the purpose of the statute was to protect subsequent purchasers and creditors without notice. *Montgomery* v. *Dorion*, 6 N. H. 255.

" The verification of the truth and good faith of a mortgage of personal property stands upon a ground somewhat different; and yet it may be said to be designed to protect persons, who have occasion to deal with the mortgagor respecting that property, from false and fictitious incumbrances, and, *in the absence of any change of possession*, to furnish some evidence that the mortgage was made in good faith. To some extent *the change of possession* affords such evidence, and the affidavit and record were designed to take the place of it when possession could not conveniently be given."

This case was decided in December, 1870, and, as will be observed, Judge BELLOWS attached great importance to the fact that the affidavit required by the statute was intended to afford those who may deal with the mortgagor some protection from fictitious incumbrances in the absence of any change of possession. He could not then have forgotten the case of *Janvrin* v. *Fogg*, 49 N. H. 340, decided in June, 1870, only six months before the decision in *Gooding* v. *Riley*. One of the head notes in *Janvrin* v. *Fogg* is as follows : " Possession by the mortgagee of personal property mortgaged answers instead of the record of the mortgage. But whether the mortgage be recorded, or possession of the property be taken under it, the affidavit required by statute must be taken and subscribed by both parties thereto."

The only allusion to this point in the lengthy opinion of the court is in these words : " Upon an examination of the several provisions of the statutes, we are satisfied that possession of the mortgaged property will only supply the place of the record of the mortgage; and that the affidavit is required in the one case as well as in the other. The affidavit is made an essential part of the mortgage itself, without which the mortgage is void as to every person but the mortgager"—p. 353.

The consideration of this point was not necessary to the decision of the questions raised in that case. It can be regarded then only as a statement coming from the learned judge who delivered the opinion of the court, and, as such, entitled to the highest respect; but nevertheless it cannot be regarded in the light of an authority.

The history of legislation on this subject is decisive of this question.

Prior to June session, 1832, neither a record nor possession by the mortgagee was essential to the validity of a mortgage. In that year an act was passed which provided that the mortgagee should take possession of the mortgaged property, or cause the mortgage to be duly recorded. It was not till December, 1840, that a statute was passed requiring the parties to annex an affidavit as to the justness of the claim secured thereby. There has been no substantial change in those provisions to this day. The twelfth section does not indeed declare in terms that a mortgage shall be valid when possession is delivered, although the mortgage is neither sworn to nor recorded ; but, " *expressio unius, exclusio alterius* " applies. " No such mortgage shall be valid * * unless possession is delivered or the mortgage is sworn to and recorded " means, that when possession is delivered the mortgage shall be deemed valid, although it is neither sworn to nor recorded.

A pledge accompanied by possession is good. There is no reason why the same principle should not be applied to a chattel mortgage, unless it be that the statute prevents it, which, it seems to me, it does not do. I am therefore of opinion that where possession is delivered to the mortgagee, a chattel mortgage, although not sworn to nor recorded, is valid. For these reasons there must be a new trial.

CUSHING, C. J. The property which is the subject-matter of this suit was attached as the property of Putnam in several suits by the present plaintiff. The defendants were receiptors, and, not having delivered the property to the officer when demanded, this action is brought against them to recover the value of the attached property. Their defence is put upon the ground, substantially, that the property was by them delivered to persons having a paramount title. They say that the property attached was held, a part of it by Levi Keese by virtue of a mortgage, and a part of it by Levi Keese, the defendant Tripp, and one Conant, by virtue of a mortgage. These mortgages were not sworn to nor recorded, but the mortgagees had possession of the property ; and the claim is, that under the statute these mortgages, though not sworn to nor recorded, were yet valid against attaching creditors, notwithstanding the statute, by reason of that possession.

It is well settled, that a receiptor may defend himself against his receipt by showing that the property has gone into the hands of the true owner ; and it is equally well settled, that the party claiming the property, from whose possession it is taken by attachment, is not estopped by his receipt from showing that he was the owner of the property.

We are then brought at once to the question as to the validity of the mortgage under the circumstances.

We had occasion, in the case of *Tucker* v. *Tilton*, 55 N. H. 223, to notice the distinction between the effect of the statute of Elizabeth making void conveyances made to defraud creditors, and the effect of our statute making void mortgages not executed with certain required formalities against all but the parties and their executors and administrators. It is not contended in the present case that there is any dis-

honesty about these mortgages, or that they would be invalid against creditors under the statute of Elizabeth. But it is said that all question of honesty or dishonesty is out of the case; and the only point is, whether, by virtue of our statute, the mortgages, by reason of the absence of certain formalities, are rendered void.

It is not questioned that if this property had been put into the hands of these mortgagees by way of pledge and not by way of mortgage, the transaction would have been good without any affidavit or record. There is no reason which can be assigned why a pledge of property placed in the possession of the pledgee should be valid, while a mortgage of the same property in the possession of the mortgagee should be invalid. One of those forms is no more liable to suspicion and furnishes no more facility for fraud than the other, and there would be practically as much reason for requiring an affidavit of the honesty of every absolute sale and every pledge, as of a mortgage where the property was in possession of the mortgagee.

This matter of a change of possession has always been, in our law, the grand criterion of the validity of conveyances against creditors. But, while we have held most rigorously to the rule that the possession of personal property by the vendor is evidence of fraud, our law has thrown no doubt over the validity of those conveyances where there is a change of possession.

I believe the first legislation in this state was the act of June 22, 1832, entitled "An act to prevent fraud in the transfer of personal property by mortgage." It provides " that no mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee, or unless the said mortgage be recorded in the office of the clerk of the town where the mortgagee shall reside at the time of making the same."

The next statute on the subject was approved December 17, 1840, and is found in the Laws of 1840, p. 291. It provides " that no mortgage of personal property liable to attachment and execution hereafter, executed, shall be valid except as between the parties thereto, unless the said parties shall severally take and subscribe the following oath or affirmation "—giving nearly the same form of oath as now in use. It will be noticed that this statute says nothing about possession by mortgagee, but makes all mortgages of personal property invalid unless sworn.

It will be noticed that by the statute of 1840 there is no provision for the repeal of the statute of 1832, or any part of it. The statute of 1832 and that of 1840 stand together upon the statute-book, and must be construed together; and it seems to me that the true construction of those statutes, taken together, would make the statute of 1840 apply solely to those mortgages where the possession was not shifted. This would leave the whole harmonious and consistent, and also consistent with the provision in the Revised Statutes next to be mentioned.

Then came the Revised Statutes of 1842. By chapter 133 it is provided as follows:

" Sec. 2. Possession of the mortgaged property must be delivered to and retained by the mortgagee, or the mortgage must be recorded in the office of the clerk of the town in which the mortgagor resides at the time of making the same.

" Sec. 3. Each mortgagor and mortgagee shall make and subscribe an affidavit, in substance, as follows :

\*   \*   \*   \*   \*   \*   \*   \*

" Sec. 7. No such mortgage shall be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed."

It is impossible not to see that by this change in the statute it was intended to restore the old principle of the law that an affidavit should not be required when the mortgagee had possession of the property. If this had not been the intention, I think that section would have been made to affect pledgees as well as mortgagees.

But it was always understood that taking and keeping possession by the vendee, mortgagee, or pledgee, did away with most of the inducements to fraud, and of course relieved the transaction from suspicion.

The provisions of the General Statutes are in the same terms and to the same effect.

In *Janvrin* v. *Fogg* it is said,—" Upon an examination of the several provisions of the statutes, we are satisfied that possession of the mortgaged property will only supply the place of record of the mortgage, and that the affidavit is required in the one case as well as in the other. The affidavit is made an essential part of the mortgage itself, without which the mortgage is void as to every person but the mortgagor."

A careful examination of all our legislation on this point has not enabled me to reach the conclusion above stated. The statute cannot be so construed without erasing the most material part of the section, and so far is the affidavit from being an essential part of the mortgage, that it is substantially said, by BARTLETT, J., in *Doolittle* v. *Lyman*, 44 N. H. 608, that, so far as this statute is concerned, it is of no consequence whether the affidavit is true or not. He holds that this affidavit is a necessary part of the *execution* of a mortgage, and that, by the statute of Elizabeth, the affidavit must be true in order to make the mortgage valid against creditors ; but as that statute is only for the protection of creditors, the mortgage under our statute will be good against subsequent purchasers, whether the affidavit is true or not. The parties to the mortgage may expose themselves to indictments for perjury, but under that statute the mortgage will be good enough if sworn to.

It seems to me, therefore, that when the mortgagee retains possession of the mortgaged property, the mortgage is good without either record or affidavit, and, the evidence of possession having been excluded, the verdict must be set aside.

LADD, J., concurred.

*Exceptions sustained.*